UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN BOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) Case No. 4:09CV135 HEA |
| | ) |
| AT&T UMBRELLA BENEFIT | ) |
| PLAN NO. 1, | ) |
| | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 19]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted.

Plaintiff filed this action seeking a judicial review of the denial of his claim for short term disability benefits under his employer's ERISA plan. Plaintiff claims the Plan's administrator abused its discretion and that the denial was arbitrary and capricious. Defendant moves for summary judgment arguing that the denial was supported by substantial evidence in the record.

## Facts and Background[1]

---

[1] The facts are taken from the parties' Statement of Uncontested Facts to which the opposing party has specifically responded. Disputes as to certain facts are noted.

Plaintiff is and has been an employed by Southwestern Bell Telephone Company ("SWBT") since August 4, 1980. At the time of his disability claim, Plaintiff was employed as a network center technician. There are no physical requirements for network center technicians, and the position is classified as sedentary.

As an employee of SWBT, Plaintiff was eligible to receive short-term disability benefits under the AT&T Disability Income Program, which is a component program under the AT&T Umbrella Benefit Plan No. 1 (collectively the "AT&T Plan").

Plaintiff presented at the emergency room at St. John's Mercy Medical Center in St. Louis, Missouri on July 30, 2006, complaining of weakness, fatigue, and tingling in his extremities. He was diagnosed with dehydration and discharged with instructions to follow-up with his primary care physician, Dr. Edward Kunst.

Plaintiff's first day of absence from work was July 31, 2006. On that day, Plaintiff was seen by Dr. Kunst, and lab tests were ordered. These tests revealed an elevated white blood cell count and the presence of a recent Parvo virus infection. The medical records from July 30, 2006, and July 31, 2006, did not instruct Plaintiff to remain off work. Plaintiff remained off work and applied for short-term disability benefits through the AT&T Plan beginning on August 7, 2006.

Plaintiff's medical records from July 31, 2006, and the lab results were received by Sedgwick Claims Management Services, Inc. ("Sedgwick") and sent to a physician advisor for review. The physician advisor, Dr. Mark Dirnberger, noted there was no indication from Plaintiff?s treating physician that Plaintiff was to remain off work. Dr. Dirnberger noted the "lack of any severe functional disability being supported by any objective medical information." Dr. Dirnberger concluded that Plaintiff could return to work as of August 7, 2006, to his sedentary occupation full-time full duty without further functional restrictions."

Plaintiff?s claim for short-term disability benefits was denied on August 25, 2006, and a denial letter was sent on August 30, 2006. The denial letter informed Plaintiff that benefits were denied on the grounds that the current medical information provided, along with the lack of physical examination findings, did not provide clinical evidence that he had a physical impairment that would interfere with his normal work activities.

As provided in the AT&T Plan, "total disability" or "totally disabled" with respect to short-term disability is defined as follows: "because of Illness or Injury, an Employee is unable to perform all of the essential functions of his job or another available job assigned by the Participating Company with the same full- or part-time classification for which the Employee is qualified."

On September 21, 2006, a letter was received from Dr. Kunst dated September 12, 2006. In this letter, Dr. Kunst stated that Plaintiff had a severe viral infection that rendered him completely disabled for a long period of time. Plaintiff was advised on September 26, 2006, that this updated medical information did not support the severity of his condition preventing him from performing his job. Plaintiff was released and returned to work on October 10, 2006, with no restrictions.

On November 12, 2006, a letter was received from Dr. Kunst dated November 7. In this letter, Dr. Kunst stated that Plaintiff had a severe viral infection, which caused him to have a severe functional disability that prevented him from being able to perform tasks at work. Included with this letter were medical records dated September 7, 2006, and October 26, 2006. The medical records from September 7, 2006, indicate that Plaintiff presented to Dr. Kunst with complaints of fatigue, dizziness, spontaneous sweating, and a decreased energy level. The medical records from September 7, 2006, did not instruct Plaintiff to remain off work. The medical records from October 26, 2006, note that Plaintiff?s malaise and fatigue had improved, he was off all medication, and he was able to work full time.

Sedgwick determined that the letter from Dr. Kunst on November 12, and the additional medical records from September 7 and October 26 did not impact the denial of Plaintiff's claim for short-term disability.[2] Plaintiff was informed that this information did not support the severity of Plaintiff?s condition preventing him from performing his job.

On November 20, 2006, Plaintiff submitted the medical records from his emergency room visit on July 30, 2006.[3] The medical records from Plaintiff?s emergency room visit on July 30, 2006, indicate that there is no sign of infection. Sedgwick reviewed the medical records from July 30, 2006, and determined they did not support the severity of Plaintiff's condition preventing him from performing his job. Sedgwick informed Plaintiff that the medical records from July 30, 2006, did not support overturning the denial of his claim for short-term disability benefits.

Plaintiff appealed the denial of his claim for short-term disability benefits on December 11, 2006. Sedgwick explained to Plaintiff that the medical records had to

---

[2] Plaintiff attempts to deny this fact, and states that "[t]he plaintiff affirmatively states the medical records of September 7, October 26 and the letters from Dr. Knust [sic] of September 12 and November 12 listed the plaintiff as disabled. The Defendant had further reviews completed on the file upon the submission of the records and letter." Plaintiff's "denial" is nonresponsive to the fact that *Sedgwick* determined that the letter from Dr. Kunst on November 12 and the additional medical records from September 7 and October 26 did not impact the denial of Plaintiff's claim for short-term disability.

[3] Plaintiff also "denies" this fact, stating that the "medical records are replete with the plaintiff [sic] complaints of fatigue and illness. Once again, Plaintiff's "denial" fails to address the specific fact stated.

support his inability to function in his job, the severity of his symptoms, the inability to perform his job duties, and his functionality as it related to his job duties. Plaintiff instructed Sedgwick that his disability file was complete. Plaintiff's medical records were sent to two independent physician advisors for review on December 19, 2006. Plaintiff's file was reviewed by Dr. Clayton Cowl, who is board certified in internal medicine, preventive medicine (occupational medicine), and pulmonary disease and is a fellow in the American College of Occupational and Environmental Medicine. According to Dr. Cowl, Plaintiff was not disabled during the relevant time period. Dr. Cowl found that the data did not confirm that either the Epstein-Barr or Parvo virus was the cause of Plaintiff?s illness. Dr. Cowl also found that there was "insufficient functional data provided to suggest a significant functional limitation that would preclude the claimant from performing a sedentary level of physical exertion as described in his essential job duties."

Plaintiff's file was reviewed by Dr. Joel Maslow, who is board certified in internal medicine and infectious diseases and is an associate professor of medicine at the University of Pennsylvania School of Medicine. Dr. Mallow found that Plaintiff was not disabled during the relevant time period. Dr. Maslow found there was no indication that the symptoms of myalgias and arthralgia were present on

September 7, 2006. Dr. Mallow found that there was no sense from the records that the fatigue was disabling. Dr. Mallow stated that the physical examinations on both July 31, 2006, and September 7, 2006, were unremarkable without evidence of muscle tenderness or joint tenderness. Dr. Mallow found that the claim of active viral infection—either the Parvo virus or the Epstein-Barr virus—could not be substantiated by the laboratory data, which indicated prior infection.

Sedgwick upheld the decision to deny Plaintiff's claim for short-term disability benefits on January 18, 2007, based on the rationale that the medical records did not support a finding of disability for the relevant time period. The AT&T Plan provides that AT&T, as the Plan Administrator, has the sole and absolute discretion to interpret the provisions of the AT&T Plan, to make findings of fact, determine the rights and status of participants and others under the AT&T Plan, and decide disputes under the AT&T Plan. The AT&T Plan requires the Plan Administrator to appoint one or more Claims Administrators, who have full and exclusive authority and discretion to grant and deny claims under the AT&T Plan. AT&T appointed Sedgwick as the Claims Administrator for the AT&T Plan. Neither of Defendants' retained experts saw Plaintiff in person. Plaintiff was infected with a prior Parvo Virus and/or Epstein Bar Virus according to Defendants retained expert. In his letter of September 12, 2006, Dr. Kunst stated that Plaintiff

was disabled from and should remain off work due to his fatigue and contagiousness. Dr. Kunst concluded that Plaintiff's blood work showed his virus titers were consistent with old mononucleosis and/or old Epstein Barr virus and a more recent Parvo virus infection. Dr. Kunst only returned the plaintiff to work on a part time basis on August 28, 2006. Dr. Kunst diagnosed Plaintiff with Parvo virus on August 8, 2006 and noted that this infection was responsible for Plaintiff's symptoms and fatigue. He also noted that Plaintiff's symptoms and fatigue would take weeks to resolve.

Defendant has been employed by Plaintiff for 26 years. Plaintiff is eligible for 52 weeks of full pay. His first day of absence from work was July 31, 2006. Defendant received Dr. Kunst's diagnosis that Plaintiff had Parvo virus on August 16, 2006.

Plaintiff asked to return to work 4 hours a day on August 24, 2006. Plaintiff was instructed that he needed to submit medical records supporting the need for this limitation.

In his letter dated September 12, 2006, Dr. Kunst stated that Plaintiff should remain out off work and not return on a full time basis on August 28, 2006. Dr. Kunst noted that Plaintiff had fatigue, lethargy and body aches. Dr. Kunst had previously noted, in his letter of September 7, 2006 that Plaintiff was fatigued and

dizzy.

Plaintiff returned to work on October 10, 2006. Plaintiff was under Dr. Kunst's care from July 31, 2006 through October 16, 2006. Dr. Kunst said Plaintiff could return to work with no restrictions on October 17, 2006. Plaintiff informed Sedgwick that this letter was in error and that his return to work date was October 10, 2006. A corrected letter from Dr. Kunst was prepared. This letter provides that Plaintiff was under his care from July 31, 2006 through October 9, 2006.

Plaintiff's doctor noted in his letter of September 7, 2006, Plaintiff had myalgias and tired easily. Plaintiff's fatigue was noted improved by Dr. Kunst on October 26, 2006.

## **Standard of Review**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348

F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung* 422 F.3d 630, 638 (8th Cir. 2005). Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197, 3 (8th Cir. 2008).

**Discussion**

Under ERISA, "[a] civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits...." 29 U.S.C. § 1132(a)(1)(B). A denial of benefits under a plan governed by ERISA is to be reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989).

If an ERISA plan grants the administrator discretion to construe the plan and to determine benefits eligibility, as in this case, the Court must apply a deferential abuse-of-discretion standard in reviewing the plan administrator's decision. *Jessup v. Alcoa, Inc.*, 481 F.3d 1004, 1006 (8th Cir.2007). Under the abuse of discretion standard applicable in this case, the Court will "reverse the plan administrator's decision 'only if it is arbitrary and capricious.' " *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir.2006) (quoting *Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir.2004)). "To determine whether a plan administrator's decision was arbitrary and capricious, 'we ask whether the decision to deny ... benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance.' *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949

(8th Cir.2000). 'Provided the decision "is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made."' *Id*. (quoting *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997)). 'The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.' *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir.2002)." *Midgett v. Washington Group Intern. Long Term Disability Plan,* 561 F.3d 887, 896 -897 (8th Cir. 2009).

Plaintiff claims that Defendant abused its discretion in denying short term disability benefits when Plaintiff's claim was denied even though Plaintiff had been advised to stay off work by his primary care physician; because Defendant's physicians never met nor examined Plaintiff; and because Defendant's physicians ignored the lab report that diagnosed Plaintiff with a recent Parvo virus infection and/or Epstein Barr infection, and ignored the notes of fatigue and muscle aches.

The decision to deny short-term disability claim "was supported by substantial evidence." *Schatz*, 220 F.3d at 949. First, physician reviewers review all of Plaintiff's medical records. Plaintiff's initial medical records did not include any recommendation that Plaintiff remain off work. Defendant advised Plaintiff that he

- 13 -

could submit further documentation of the advice to remain off work. The first time there was any indication that Plaintiff could remain off work was the September 12, 2006 letter from Dr. Kunst. This letter came *after* the initial denial of benefits.

Plaintiff's argument that the reviewing physicians did not examine him does not require reversal of the decision. The physicians reviewed the entire medical record, as well as Plaintiff's physician's recommendation. Dr. Kunst's finding of disability was not documented anywhere in Plaintiff's medical record. The physician advisor's reviews in this case, viewed together, accurately represent Plaintiff's medical record and adequately address the evidence supporting his claim for disability. They all explained that their findings did not demonstrate that Plaintiff was unable to perform his job duties.

Likewise, Plaintiff's claim that the physician reviewers' opinions were given more weight than his treating physician does not require a finding of abuse. The Supreme Court has recognized that treating physicians are not automatically entitled to special weight in disability determinations under ERISA:

> Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

In *Weidner v. Fed. Express Corp.*, 492 F.3d 925, 930 (8th Cir. 2007), the Eighth Circuit applied *Nord* to hold that a plan administrator did not abuse its discretion in denying a claimant total disability benefits despite a treating physician's opinion that the claimant was "fully disabled." The Court emphasized that consultative specialists had concluded that the medical evidence did not reflect total disability and that the claimant's annual MRI scans indicated that her condition had "progressed very little during the relevant period." *Id*. Furthermore, in *Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894, 899 (8th Cir.2006), the Court rejected the contention that the plan administrator abused its discretion when it "credited [a reviewer's] analysis over [a primary care physician's] conclusions because [the reviewer] did not physically examine [the claimant]." The Court noted that "[w]e have held ... that a plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial." *Id*. at 899-900 (citing *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir.2006); *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir.2002)). See also, *Midgett*, 561 F.3d at 897.

Plaintiff also urges that the physician advisors ignored the August 8 lab report and Plaintiff's claims of fatigue and muscle aches. As Defendant argues, the record belies Plaintiff's claims. Each physician advisor specifically noted the complaints of fatigue and muscle aches and specifically reviewed the lab report. They did not merely deny the claim, rather, their opinions were carefully rendered based on the record before them. Indeed, Dr. Maslow considered Plaintiff's complaints and analyzed them *vis a vis* evidence of muscle tenderness, joint tenderness, or any other indication that the fatigue was disabling.

## **Conclusion**

The deferential standard discussed herein requires this Court to affirm an administrator's decision if "a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 875 (8th Cir.. 2006). The record before the Court clearly establishes that a reasonable person could have reached the decision to deny short term disability benefits. As such, the decision was neither arbitrary nor capricious; it was therefore not an abuse of discretion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment, [Doc. No. 19], is granted.

A separate judgment is entered this same date.

Dated this 4th day of February, 2010.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE